# In the United States Court of Federal Claims

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                    *      No. 09-401C
ROAD AND HIGHWAY BUILDERS, LLC      *
a Nevada limited liability company, *
                                    *      (Filed: December 8, 2011)
            Plaintiff,              *
                                    *
      v.                            *      Contracts, agreement to release
                                    *      IRS's right of redemption, 26 U.S.C.
THE UNITED STATES,                  *      § 7425(d), jurisdiction, presumption
                                    *      of good faith for government
            Defendant.              *      employees, motion in limine to
                                    *      exclude prior testimony
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

*Carl M. Hebert*, Law Office of Carl Hebert, Reno, NV, for plaintiff.

*Gregg Paris Yates*, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Brian M. Simkin*, Assistant Director, for defendant.

## OPINION

MARGOLIS, *Senior Judge.*

This case arises out of a settlement in which the Internal Revenue Service ("IRS") agreed to release its right to redeem certain real property pursuant to 26 U.S.C. § 7425(d) in return for plaintiff Road and Highway Builders, LLC's ("RHB") payment of $100,000 ("the release"). It was later determined, in separate but related litigation, that notices of tax liens filed by the IRS against the property were improperly recorded. Because the IRS's right to redeem is contingent upon properly recorded notices of tax liens, plaintiff claims that the release is void for lack of consideration. Plaintiff now seeks a return of the $100,000 it paid to the IRS for the release.

A one-day trial was held by this Court on June 7, 2011. The precise issue upon which trial was held was whether the IRS acted in good faith when it entered into a settlement with RHB regarding its purported right to redeem the property. The parties presented evidence and witnesses, and submitted pretrial briefs, post-trial briefs, and proposed findings of law and fact.

The Court finds that it has jurisdiction over plaintiff's claim. The Court also finds that defendant's motion in limine to exclude the prior testimony of Betty Waters, filed June 3, 2011, should be denied. After carefully reviewing the testimony and evidence at trial, the Court finds

1

that plaintiff has failed to prove by clear and convincing evidence that the IRS acted in bad faith when it entered into the release to redeem certain real property.

## I. BACKGROUND

In November 2000, articles of incorporation were filed for Crystal Cascades, LLC with the Nevada Secretary of State.  Shortly thereafter, the IRS assigned Crystal Cascades, LLC a taxpayer identification number.  On May 31, 2001, Crystal Cascades, LLC changed its name to Crystal Cascades Civil, LLC.  Crystal Cascades Civil did not notify the IRS of the name change, but continued to use the same taxpayer identification number in its tax filings.

On July 15, 2004, deeds of trust were recorded in Clark County against real property owned by Crystal Cascades Civil, and located at 2640 N. Las Vegas Boulevard, Las Vegas, Nevada ("the property").  The deeds of trust secured certain loans made to Crystal Cascades Civil by Business Bank of Nevada.

Crystal Cascades Civil failed to fully pay its employment taxes in 2003 and 2004.  As a result, IRS Revenue Officer Sharon Simpson caused notices of federal tax liens to be filed with the Clark County recorder on August 11, 2004 and January 28, 2005.  Unfortunately for the IRS, the notices named "Crystal Cascades, LLC" rather than "Crystal Cascades Civil" as the taxpayer.

On February 4, 2005, additional deeds of trust were recorded against the property, this time as security for a series of loans made to Crystal Cascades Civil by RHB.

Crystal Cascades Civil filed for Chapter 11 protection on September 28, 2005 in the United States Bankruptcy Court for the District of Nevada ("the bankruptcy court").  RHB filed an adversary proceeding against the IRS, arguing that RHB's deeds of trust had priority over the IRS's tax liens.  While the adversary proceeding was pending, the bankruptcy court allowed Business Bank, the senior secured creditor, to foreclose on the property.  At the foreclosure sale, RHB purchased the property for $1.43 million; RHB believed the property to be worth at least $2 million.  Business Bank kept a portion of the sale proceeds in full satisfaction of its claim; the surplus proceeds were placed in escrow pending the outcome of RHB's adversary proceeding against the IRS.

Under 26 U.S.C. § 7425(d), the IRS has a right to redeem property against which it has a valid tax lien.  When a bidder purchases a piece of property subject to a tax lien at a foreclosure sale, the IRS can buy the property back from the successful bidder, typically for the bidder's purchase price, in the hopes of reselling it for more money.  *See* INTERNAL REVENUE MANUAL § 5.12.4.8 (2010).  On June 15, 2006, Revenue Officer Karon Ripp told RHB that the IRS would release its right to redeem the property in exchange for consideration.  RHB offered $100,000 for the release, and the IRS accepted.  On June 19, 2006, RHB sent the IRS a cashier's check for $100,000; on June 21, 2006, the IRS executed a "release of right of redemption" in favor of RHB.

On November 8-9, 2007, the bankruptcy court held a trial in the adversary proceeding between RHB and the IRS.  "The main issue … was whether a reasonable search of the relevant real property records would have revealed either notice of [the IRS's] tax lien."  *In re Crystal Cascades Civil, LLC*, 398 B.R. 23, 26 (Bankr. D. Nev. 2008).  At the end of the trial, the bankruptcy court concluded that "the IRS's notices of tax lien did not impart constructive notice on third parties," and that "[p]laintiffs are entitled to the surplus proceeds from the foreclosure sale."  *Id.* at 37.  The bankruptcy court's ruling was later affirmed by the United States Court of Appeals for the Ninth Circuit.  *See in re Crystal Cascades Civil, LLC*, 415 B.R. 403, 412 (9th Cir. 2009).

On June 16, 2009, RHB filed a complaint against defendant the United States in the United States Court of Federal Claims, seeking a return of the money that it paid the IRS for the release.  According to plaintiff, the IRS's right to redeem the property was contingent upon the validity of its tax liens.  Because those tax liens were found by the bankruptcy court to be invalid, plaintiff asserts that the IRS's right to redemption was illusory.  Thus, plaintiff claims, there was a failure of consideration, and plaintiff should be entitled to a return of the $100,000 it paid for the release.

## II. SUBJECT MATTER JURISDICTION

Defendant argues that the Court lacks subject matter jurisdiction under the Tucker Act[1] because plaintiff's action sounds in tort rather than contract.  Defendant argues that if there was a failure of consideration, as plaintiff contends, then there is no valid contract, and plaintiff must therefore base its action on allegations that defendant misrepresented the validity of the tax liens or misrepresented that it would exercise its right to redemption, *i.e.*, tort claims.

A plaintiff need only plead the existence of a valid contract to invoke the Court's jurisdiction; it need not ultimately prove a valid contract.  *Total Medical Management, Inc. v. United States*, 104 F.3d 1314, 1319 (Fed. Cir. 1997).  Whether a plaintiff has stated a contractual claim on which relief can be granted and whether it can ultimately prove facts supporting such a claim go to the merits of the case, not jurisdiction.  *Id.* at 1319-21 (finding jurisdiction and then dismissing for failure to state a claim where government regulations voided the alleged contracts).  For example, in *Morris v. United States*, the plaintiffs advanced theories of recovery based on defendant's pre-contractual conduct in selling real property including: (1) oral misrepresentations that made the contract voidable, (2) failure to disclose superior knowledge, (3) mutual or unilateral mistake of material fact, and (4) breach of the implied obligation of good faith and fair dealing.  33 Fed. Cl. 733, 742 (1995).  The court held that jurisdiction was not defeated by the possibility that the plaintiffs had failed to state a claim.  "[W]e could not decide

---

[1]     The Tucker Act vests the U.S. Court of Federal Claims with jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).

whether or not plaintiffs' contract claims had any merit without first assuming jurisdiction." *Id.* at 743.

Here, plaintiff's complaint alleges that a valid contract existed and that defendant breached that contract. (*See* Compl. ¶¶ 9-12.) "The IRS breached its contract with RHB when it sold the waiver of a right of redemption which did not exist." (*Id.* ¶ 11.) Thus, plaintiff's complaint is sufficient to invoke the Court's jurisdiction even if it fails to state a claim, or if plaintiff ultimately fails to prove the existence of a valid contract. *Total Medical Management*, 104 F.3d at 1319-21; *Morris*, 33 Fed. Cl. at 742-43; *see also Nematollahi v. United States*, 38 Fed. Cl. 224, 231 n.5 (1997) (claims that defendant contractually misrepresented the quality of property's ground water and/or that plaintiff made a unilateral mistake regarding quality of water revolved around alleged breach of contract, thus granting jurisdiction); *Hartle v. United States*, 18 Cl. Ct. 479, 483 (1989) (court had jurisdiction over misrepresentation claim because it was closely bound up with contract and arose primarily from a contractual undertaking).

### III. DEFENDANT'S MOTION IN LIMINE
#### TO EXCLUDE THE PRIOR TESTIMONY OF BETTY WATERS

Defendant argues that the Court should exclude the prior testimony of Betty Waters, an expert who testified on behalf of the IRS at the bankruptcy trial, as inadmissible hearsay pursuant to FRE 802.[2]   At the bankruptcy trial, Waters testified that "although she would have found the IRS tax lien notices, … the average reasonably diligent user … would not have found the IRS's notices of tax liens …." *Crystal Cascades Civil*, 398 B.R. at 34.   Plaintiff argues that because this testimony was damaging to the IRS's contention that the tax lien notices were valid, the IRS would not have offered the testimony if it had checked with Waters as to whether the notices were valid.   Thus, plaintiff argues, the IRS never checked with anyone knowledgeable about title searches to see if the tax lien notices were valid, and acted recklessly as to whether it had a viable right of redemption to sell plaintiff.

The Court will admit Waters's testimony under FRE 807.   This rule permits the Court to admit statements not covered by the hearsay exceptions of FRE 803 and 804, but having "equivalent circumstantial guarantees of trustworthiness," if the Court determines that: (A) the proponent offers the statement as evidence of a material fact, (B) the statement is more probative on the point for which the proponent offers it than any other evidence which the proponent can procure through reasonable efforts, and (C) admitting the evidence will serve the general purpose of the rules and the interests of justice.   Here, the testimony has equivalent circumstantial guarantees of trustworthiness because Waters testified at a trial on behalf of defendant and had no reason to further plaintiff's case.   *See United States v. Clarke*, 2 F.3d 81, 84-85 (4th Cir.

---

[2]   FRE 802 provides that "[h]earsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."   "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."   FRE 801(c).

1993) (finding that defendant's brother's testimony in separate suppression hearing had equivalent circumstantial guarantees of trustworthiness because his own counsel questioned him and a government attorney cross-examined him, and because he had no incentive to lie). Further, plaintiff offers the testimony to prove a material fact, *i.e.*, whether the IRS checked with Waters to determine if the tax lien notices were valid. Waters's testimony is also more probative on this point than any other evidence. Finally, admitting the testimony will serve the general purpose of the rules and the interests of justice. Thus, the Court admits Waters's testimony. Defendant's motion in limine to exclude the prior testimony of Betty Waters is denied.

### IV. THE EVIDENCE AT TRIAL

Plaintiff argues that there was no consideration for the release because the IRS did not and could not have had a good faith belief in the merits of its right to redemption when it contracted with RHB for the release. Defendant argues that there is insufficient evidence of bad faith on the part of the IRS.

"Forbearance to assert or the surrender of a claim or defense which proves to be invalid is not consideration unless … the forbearing or surrendering party believes that the claim or defense may be fairly determined to be valid." RESTATEMENT (SECOND) OF CONTRACTS § 74(1)(b); *see also ITT Gilfillan, Inc. v. United States*, 471 F.2d 1382, 1385-86 (Ct. Cl. 1973) ("[I]t is settled law that a compromise 'is supported by sufficient consideration when there is a bona fide claim which is … disputed or doubtful, the real consideration to each party being not the sacrifice of the right but the settlement of the dispute.'" (internal citation omitted)); RICHARD A. LORD, 3 WILLISTON ON CONTRACTS § 7:47 (4th ed. 2011) (same). However, "a mere assertion or denial of liability does not make a claim doubtful, and the fact that invalidity is obvious may indicate that it was known." RESTATEMENT (SECOND) OF CONTRACTS § 74 cmt. b. "In such cases [the law] requires a showing of good faith." *Id.*; *see also Aviation Contractor Employees, Inc. v. United States*, 945 F.2d 1568, 1574 (Fed. Cir. 1991) (in order to qualify as consideration, the "pre-existing duty must be the subject of 'honest dispute,' or in other words, the parties must hold their positions in good faith.").

### A.      Presumption of Good Faith for Government Employees

Defendant argues that the IRS is entitled to a presumption of good faith, and that the presumption can only be overcome by clear and convincing evidence of improper motive. Citing *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1240 (Fed. Cir. 2002), plaintiff argues that the government is not entitled to a presumption of good faith because no accusations of fraud or quasi-criminal wrongdoing were made against the IRS.

As a general proposition, "government officials are presumed to act in good faith;" "[t]his presumption stands unless there is irrefragable proof to the contrary." *Savantage Financial Services, Inc. v. United States*, 595 F.3d 1282, 1288 (Fed. Cir. 2010) (quoting *Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 795 (Fed. Cir. 1993)). "[T]he standard for demonstrating 'well-nigh

irrefragable proof' is high, as it refers to 'evidence that cannot be refuted or disproved.'" *Long Lane Ltd. Partnership v. Bibb*, 159 Fed. Appx. 189, 192 (Fed. Cir. 2005) (quoting *Am-Pro Protective Agency*, 281 F.3d at 1240). Irrefragable proof "amounts to 'clear and convincing evidence,'" *Galen Medical Associates, Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) (quoting *Am-Pro Protective Agency*, 281 F.3d at 1239-40), and "has been equated with evidence of some specific intent to injure the plaintiff." *Savantage Financial Services*, 595 F.3d at 1288 (quoting *Galen Medical Associates*, 369 F.3d at 1330).

Contrary to plaintiff's assertion, the presumption of good faith is not limited to cases where a government official is accused of fraud or quasi-criminal wrongdoing. In *Am-Pro Protective Agency*, the Federal Circuit held that "the presumption of good faith, *as used here*, applies only in the situation where a government official allegedly engaged in fraud or some other quasi-criminal wrongdoing." *Am-Pro Protective Agency*, 281 F.3d at 1239 (emphasis added). Since the *Am-Pro Protective Agency* decision, however, the Federal Circuit has consistently applied the presumption of good faith (and the irrefragable/clear and convincing evidentiary standard) to cases not involving allegations of fraud or quasi-criminal wrongdoing. *See, e.g.*, *Savantage Financial Services*, 595 F.3d at 1288 (holding that plaintiff failed to rebut presumption of good faith where government was accused of using contract requirements as pretext to circumvent injunction); *Nova Express v. Potter*, 277 Fed. Appx. 990, 993 (Fed. Cir. 2008) (holding that plaintiff failed to rebut presumption of good faith where government was accused of terminating contract based on the plaintiff's failure to meet contract requirements); *Galen Medical Associates*, 369 F.3d at 1335-37 (holding that plaintiff failed to rebut presumption of good faith where government was accused of bias in awarding contracts). These holdings are consistent with the Federal Circuit's broad and unqualified application of the presumption in pre-*Am-Pro Protective Agency* type cases. *See, e.g.*, *T & M Distributors, Inc. v. United States*, 185 F.3d 1279, 1285 (Fed. Cir. 1999) (holding that plaintiff failed to rebut presumption of good faith where government was accused of underestimating requirements in solicitation); *Markland v. Office of Personnel Management*, 140 F.3d 1031, 1035-36 (Fed. Cir. 1998) (holding that plaintiff failed to rebut presumption of good faith where government was accused of improper reduction in force); *Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1582 (Fed. Cir. 1995) (holding that plaintiff failed to rebut presumption of good faith where government was accused of terminating contract because of bad drafting). Thus, *Am-Pro Protective Agency*'s holding is limited to the specific facts of that case.[3] The IRS is therefore

---

[3]        *But see Tecom v. United States*, 66 Fed. Cl. 736, 769 (2005) (Wolski, J.) (holding that "when the government actions that are alleged are not formal, discretionary decisions, but instead the actions that might be taken by any party to a contract, the presumption of good faith has no application."); *Universal Shelters of America, Inc. v. United States*, 87 Fed. Cl. 127, 145 (2009) (Wolski, J.) (same).

entitled to a presumption of good faith, which may be overcome only by clear and convincing evidence.[4]

**B.     Clear and Convincing Evidence of Bad Faith**

Plaintiff argues that bad faith can be inferred from the following facts:

- Revenue Officers Sharon Simpson and Karon Ripp "did nothing to check to see if Crystal Cascades, LLC … [was] conducting business under other names."  (*See* Pl.'s Proposed Findings of Fact and Conclusions of Law, Proposed Conclusions of Law ¶¶ 2, 5.)
- "Ripp had already decided that the IRS would not exercise its purported right to redeem <u>before</u> entering negotiations with RHB for a waiver of that right."  (*Id.* ¶ 3 (emphasis in original).)  Also, "Ripp told … RHB that upon redemption the IRS would pay RHB its purchase price with interest," when Ripp knew that the IRS "would be required to pay RHB the fair market value of the property."  (*Id.* ¶ 4.)
- In the bankruptcy court, "[t]he IRS lost at trial and on appeal."  (*Id.* ¶ 7.)
- At the bankruptcy trial, the IRS's expert witness, Betty Waters, testified that "an ordinary person searching for liens on the property would *not* have found the Notices of Federal Tax Liens."  (*Id.* ¶ 6 (emphasis in original).)

In light of the evidence adduced by defendant, however, the alleged facts do not give rise to an inference of bad faith on the part of the IRS.

**1.      Failure to Search for Other Names**

Neither Revenue Officers Simpson nor Ripp checked to see if Crystal Cascades, LLC was doing business under any other name.  (*See* Trial Transcript ("TT") at 117-19 (Simpson, testifying that she did not search for alternative names).)  The evidence establishes, however, that Simpson and Ripp had no reason or responsibility to search for other names used by Crystal Cascades, LLC.  Simpson testified that the information she uses for filing notices of tax liens comes from the IRS's "Integrated Collections System [("ICS")])," which is "handled by other parts of the IRS [she] [was] not aware of …."  (*Id.* at 121-22.)  Simpson explained that she would not "typically look at a taxpayer's physical tax returns prior to filing Notices of Federal Tax Liens," and that this was "consistent with IRS policy."  (*Id.* at 134-35.)  The information used by Ripp also came from the ICS system.  (*See id.* at 79-81 (Jones).)  "[I]f the name on the liens

---

[4]         In *Am-Pro Protective Agency*, the plaintiff claimed "duress" when a contracting officer threatened to cancel the plaintiff's contract if the plaintiff did not agree to certain contractual modifications.  *See Am-Pro Protective Agency*, 281 F.3d at 1241.  Although the duress was not technically fraudulent, nor did it violate any criminal statute, the Federal Circuit nonetheless determined that the presumption of good faith should apply.  *See id.*  Like the contracting officer in *Am-Pro Protective Agency*, the IRS here is accused of sharp practices that are neither fraudulent nor criminal.  The IRS would therefore qualify for the presumption of good faith even under the *Am-Pro Protective Agency* standard.

matches the name on the ICS," as it did in this case, then Ripp would "stop there and then go[ ] on to other aspects of the right of redemption;" Ripp would not normally "check to see if the taxpayer is using names other than Crystal Cascades[,] LLC." (*Id.* at 81, 83.) Because Simpson and Ripp were not required, nor did they have any reason, to check for other names for Crystal Cascades, LLC, their failure to do so does not indicate bad faith.

### 2.    Negotiating the Release

Plaintiff has established that the IRS did not intend to redeem the property, but negotiated the release with plaintiff anyway. (*See* JX 14 at US-RHB-035 (Archive History Trans.) ("[A]fter reviewing the case I'm not going to redeem the property."); TT at 31 (Buenting, president of RHB, testifying that Ripp never told him that "the IRS had no intention of exercising its right of redemption.").) Moreover, Ripp told RHB that if the IRS redeemed the property, RHB would be entitled to receive only the price it paid for the property at the foreclosure sale plus interest. (*See* TT at 47 (Ripp "explained to [Buenting] that if the IRS were to redeem the property, you would get your full purchase price back, in addition to the interest ….").) In reality, Ripp knew that RHB may have been entitled to receive the fair market value of the property, which (at the time) was much higher than the purchase price at the foreclosure sale. (*See* JX 14 at US-RHB-035 (Archive History Trans.) ("Bank of Hemet v. US would have us reimbursing the purchaser FMV [fair market value] rather than the 1.45M plus interest.").)

These facts do not, however, constitute clear or convincing evidence of bad faith by the IRS. 26 U.S.C. § 7425(d)(1) gives the IRS 120 days to redeem the property, during which time the IRS is free to consider, exercise, or sell that right. Plaintiff has failed to cite any evidence or case law to suggest that the IRS is required to release its right to redemption once it decides not to redeem. In fact, the opposite seems to be true. Katherine Jones, the manager of the IRS's advisory section of collections and Ripp's supervisor, testified that it is standard practice for the IRS to "realize value" from the release of a right of redemption in cases where actual redemption may not be feasible. (*See* TT at 66, 89.) As Jones explained, the IRS conferred a "benefit" on plaintiff by allowing it to "go ahead and pursue his business interests" before the end of the 120-day redemption period. (*See id.* at 89-90, 103-04, 106.) Jones testified that "the overriding factor in what we do is what is in the best interests of government," and that there was no "improper motive" on Ripp's part. (*See id.* at 76, 103.) To the extent Ripp misstated the amount plaintiff would receive from a redemption, plaintiff should not have relied upon Ripp's representations. "[A] party in negotiation with the government has no right to depend on 'representations as to questions of law' provided by the government agent"— especially if that party is represented by counsel, as plaintiff was here. *Robinson v. United States*, 95 Fed. Cl. 480, 487 (2011) (quoting *Collins v. United States*, 532 F.2d 1344, 1349 (Ct. Cl. 1976)); *see also Guard Security Police Service, Inc. v. United States*, No. 90-3914C, 1992 WL 189530, at *3 (Cl. Ct. March 30, 1992) (Margolis, J.) ("Even assuming the government did misrepresent the law to Guard Security (a matter this court does not reach), a contract cannot be disturbed on the basis of misrepresentation of the law."); TT at 45 (Buenting, testifying that he consulted a lawyer in

connection with the release); JX 14 at US-RHB-036 (Archive History Trans.) (noting that RHB was represented by counsel).  Plaintiff has therefore failed to demonstrate bad faith in the negotiation of the release.

### 3.        The Bankruptcy Court's Ruling

The IRS ultimately lost its case in bankruptcy court; both the bankruptcy court and the Ninth Circuit held that "the IRS's notices of tax lien did not impart constructive notice on third parties."  *Crystal Cascades Civil*, 398 B.R. at 37; *see also Crystal Cascades Civil*, 415 B.R. at 412.  According to plaintiff, this is evidence of a lack of reasonable grounds for believing in the validity of the right of redemption.

Contrary to plaintiff's assertion, the evidence strongly suggests that the IRS had reasonable grounds for believing in its right to redemption.  "Even though the invalidity [of a party's claim] later becomes clear, the bargain is to be judged as it appeared to the parties at the time …."  RESTATEMENT (SECOND) OF CONTRACTS § 74 cmt. b.  At the time the parties entered into the release, the bankruptcy court had not yet rejected the IRS's arguments, and the IRS had every reason to believe its claim was made in good faith.  As the Ninth Circuit recognized, "there [was] no precise legal test for determining what constitutes a 'reasonable inspection,'" of public records, leaving open the question of whether reasonableness should be "tested against the conduct of an ordinarily prudent person," as argued by plaintiff, or "a professional title officer," as argued by the IRS.  *Crystal Cascades Civil*, 415 B.R. at 409; *see also Crystal Cascades Civil*, 389 B.R. at 29 (noting that "[m]any courts have struggled when determining what constitutes a reasonable search of a recording office.").  Moreover, the IRS's position was supported by case law from other jurisdictions that "enforced federal tax liens even after finding an error in the taxpayer's name …."  *Crystal Cascades Civil*, 398 B.R. at 29-30 (citing, *e.g.*, *Kivel v. United States*, 878 F.3d 301, 305 (9th Cir. 1989) ("Bobbie Morgan" rather than "Bobbie Morgan Lane"); *In re Spearing Tool and Manufacturing Co.*, 412 F.3d 653, 656 (6th Cir. 2005) ("Spearing Tool & Mfg. Co., Inc." rather than "Spearing Tool and Manufacturing Co., Inc."); *Quist v. United States*, 327 F. Supp. 2d 890, 894 (E.D. Tenn. 2004) ("Joint Effort" rather than "Joint Effort Productions, Inc.")).[5]  Plaintiff has therefore failed to demonstrate by clear and convincing evidence that the IRS lacked a good faith belief in the validity of its right to redemption.

---

[5]        Plaintiff argues that the IRS acted in bad faith by resorting to case law from other jurisdictions with differing practices.  As set forth above, neither the bankruptcy court nor the Ninth Circuit had ruled on what constituted a "reasonable search" *in Clark County*.  *See Crystal Cascades Civil*, 415 B.R. at 409; *Crystal Cascades Civil*, 389 B.R. at 29.  The IRS did not act in bad faith by citing persuasive precedent from other jurisdictions, including the Ninth Circuit.

### 4. Betty Waters's Testimony

At the bankruptcy trial, Betty Waters testified that "the average reasonably diligent user looking for liens on property owned by Crystal Cascades Civil, LLC would … *not* have found the IRS's notices of tax liens …." *Crystal Cascades Civil*, 398 B.R. at 34 (emphasis added). Plaintiff argues that if the IRS had spoken with Waters before the bankruptcy trial, it would have known that its legal arguments were anything but watertight. Waters's testimony does not evidence bad faith by the IRS. In bankruptcy court, the IRS argued that "the reasonableness of the inspection should be tested against the search methods used by a professional title officer." *Crystal Cascades Civil*, 415 B.R. at 410. Consistent with this position, Waters testified that a professional title officer performing a high-liability title search *would* have found the IRS's tax lien notices in the Clark County index. *See Crystal Cascades Civil*, 398 B.R. at 33-34. The fact that Waters's testimony was unhelpful to the IRS under the "nonprofessional searcher" standard ultimately adopted by the bankruptcy court does not suggest that the IRS acted in bad faith.

## V. CONCLUSION

For the foregoing reasons, the Court finds that plaintiff has failed to prove bad faith by clear and convincing evidence. Accordingly, the Clerk shall enter judgment in favor of defendant and against plaintiff. The parties shall bear their own costs.

s/ Lawrence S. Margolis
LAWRENCE S. MARGOLIS
Senior Judge, U.S. Court of Federal Claims